(Nos. 80-CC-1112, 80-CC-1160 cons.—

MARK W. EDWARDS and JEFFREY D. COTTENGAIM, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed December 9, 1980.*

MARK W. EDWARDS and JEFFREY D. COTTENGAIM, *pro se,* for Claimants.

TYRONE C. FAHNER, Attorney General (SUE MUELLER, Assistant Attorney General, of counsel), for Respondent.

Roe, C. J.

These two claims involve substantially similar facts and issues of law and were consolidated by order of a commissioner of the Court to facilitate presentation of the cases at hearing. The facts involved are as follows.

Claimant Mark Edwards is employed as an automotive mechanic with the Department of Administrative Services, State of Illinois. Claimant Jeffrey Cottengaim is employed as a mechanic's helper by the same department. Both Claimants are, and at all times relevant in this case were, assigned to a maintenance site located at 640 Lincoln Avenue in Springfield, Illinois, at their respective positions and were charged with the responsibility of repairing State-owned equipment. The site is jointly occupied by the Department of Transportation and Administrative Services. The area occupied by Administrative Services was secured by electronic bay doors, but the section occupied by the Department of Transportation was not kept locked.

The premises were subjected to burglaries on April 2, 1977, and again on November 3, 1979, the latter giving rise to the claim at bar. Identical methods were used in the commission of both burglaries. Unknown parties apparently gained access by climbing over a chain link fence, entering through the Department of Transportation side of the building, and then proceeding through to the Administrative Services section. Neither time was there any sign of forced entry. Next, they loaded parts and tools into State trucks, opened the bay doors, and drove off with the stolen items.

After the first burglary the Claimants had repeatedly requested from their superiors additional security. A

request was even made for materials with which Claimants could construct security devices on their own. However, no additional security measures were taken between April 2, 1977, and November 3, 1979.

The testimony further showed that as a condition of employment each of the Claimants was required to furnish his own tools. Claimant Edwards testified that he had a large tiered tool box which weighed in excess of 400 pounds and that it would not fit into an automobile. The same was true of Mr Cottengaim, although his was somewhat smaller. Each had always left his tools on the premises because of the difficulty of moving the same and also because they were subject to emergency call for repairs on State road maintenance vehicles, especially during times of snow removal.

Claimants are seeking compensation for the loss of their tools occasioned by the burglary. In support of their allegation as to the value of the items stolen they submitted invoices which were attached to their complaints which showed the variety and costs of the items. They further stated that the tool suppliers with whom they deal allow them to maintain a revolving inventory of tools for which they pay continually.

The issue presented for determination by the Court is whether or not the facts stated above constitute a bailment or, alternatively, whether or not, or under what circumstances, the employer has a duty to safeguard the property of an employee and the facts presented show negligence and breach of that duty on the part of the State.

There is a paucity of recent case law on this subject from the Court of Claims. Early cases tended to go both ways on the issue. However, they were decided under a prior Court of Claims Act whereby the Court had

jurisdiction or power to make awards which should be made "in equity and good conscience." The seeming inconsistencies among them can be explained by the equities of the particular circumstances. They are clearly no longer relevant.

Two cases decided under a later Act (since superseded) whereby the Court still had equitable jurisdiction, although it did not enter into the decision were *Pacha v. State* (1958), 22 Ill. Ct. Cl. 741 and *Klimek v. State* (1952), 21 Ill. Ct. Cl. 145. In *Pacha* an employee of the State lost personal property which was being transported by an airplane belonging to the Illinois National Guard. The plane crashed and the property burned. The case was dismissed without a factual hearing on three grounds. First, the statute of limitations had expired. That has not happened in the case at bar. Second, the pleadings were improper in form and substance. The Respondent has not objected to the pleadings in the instant case. Third, the Court stated:

"In prior decisions, this Court has held that the State is not an insurer of the property of its employees. In event an employee elects to use personal property in his employment, he assumes the risk of its loss. (Citing *Klimek*, supra.)"

In the case at bar Claimants are not seeking to hold the State liable as an insurer but have charged the State with negligent conduct. Their situation is also distinguishable in that the property lost was not personal effects but tools which were used by them in the performance of their job and which the State required them to provide on their own. Furthermore, the claim was denied in the *Klimek* case on the basis that the Claimant failed to prove the State negligent.

There is a similar lack of case law from the judicial courts in Illinois. Only one case presenting a similar factual situation could be found: *Berglund v. Roosevelt*

*University* (1974), 18 Ill. App. 3d 842, 310 N.E.2d 773. In that case the plaintiff was a full-time student at Roosevelt University and also served as a photographer and editor of the school newspaper. Whether the plaintiff was in actuality a student or employee of the university was not deemed relevant by the Court in its determination of the existence of a bailment relationship. The school provided the plaintiff with an office and photo dark room in a university building. Plaintiff did not request permission to do so but, like his predecessor stored his own camera equipment which was used by him in his capacity as photographer for the paper on the premises. It was stolen and plaintiff brought an action on two separate legal theories, breach of an implied bailment contract and negligence. The Court found, as we do here, that the negligence theory is essentially bottomed upon a bailment relationship and dealt with the case as a bailment action.

The Court stated that under proper circumstances, a bailment relationship can be established between an employee and employer. It further set forth basic factors to be considered:

"Bailment is defined as the rightful possession of goods by one who is not an owner. The characteristics common to every bailment are the intent to create a bailment, delivery of possession of the bailed items, and the acceptance of the bailed items by the bailee. (citation omitted) In determining the existence of an implied-in-fact bailment, one must analyze the facts surrounding the transaction, such as the benefits to be received by the parties, their intention of the kind of property involved, and the opportunity of each to exercise control over the property. (citation omitted) Supra, 310 N.E.2d 773, at 775, 776."

The Court in *Berglund* held against the plaintiff because the plaintiff failed to prove knowledge on the part of the defendant of the storage of the items stolen. Knowledge was said to be essential to prove proper delivery and acceptance. Physical control over the property allegedly bailed and an intention to exercise that control are needed to show that one is in possession of the bailed item. The case does stand for the proposition

that under proper circumstances a bailment relationship can exist however, and we find that the proper circumstances exist and were proven in the case at bar.

All of the basic elements of an implied-in-fact bailment were established. The property was stored on State property in a State building. The State had knowledge of the fact that it was in possession of the property because of the fact that it required these employees to use their own tools. By requiring Claimants to provide their own tools the State would have knowledge of their lack of mobility because of the nature and number of tools required. Furthermore Claimants made known to the State the circumstances when they requested materials to construct their own security devices. A routine investigation of the first burglary should also have made the State aware.

We also find that the tools being located on the premises was a matter of mutual benefit to both parties. The Claimants received the benefits of employment. The State received the benefit of having an efficient maintenance shop during emergency repairs. The State also would not have to expend money to provide these tools for the maintenance shop since, by the testimony, it would have been virtually impossible for the employees to transport the tools to and from their place of employment on a day to day basis.

As we have said in numerous bailment cases involving property of State prisoners and inmates, the loss of bailed property while in the possession of the bailee raises a presumption of negligence which the bailee must rebut by evidence of due care. The effect of this rule is not to shift the ultimate burden of proof, but simply to shift the burden of proceeding or going forward with the evidence. The State did not put forth any evidence. The

standard of due care which a bailee must exercise in a mutually beneficial relationship is ordinary care or that which persons of ordinary prudence customarily take of their own goods under similar circumstances. The unrebutted testimony of the Claimants clearly demonstrated that the State did not meet this standard. The State did nothing to restrict access to Claimants' working area after hours even after it was victimized by a prior burglary. It did not even provide materials to allow the Claimants to construct their own security precautions. Persons of ordinary prudence certainly would have done something, especially considering the value of the items at risk.

We find that the facts of this case constitute an implied-in-fact bailment and that the State did not exercise due care with respect to the bailed property and thereby is liable for the loss sustained.

It is hereby ordered that Mark W. Edwards be awarded $1,318.65 (one thousand three hundred eighteen dollars and sixty-five cents); and that Jeffrey D. Cottengaim be awarded $392.64 (three hundred ninety-two dollars and sixty-four cents).